Curia, per
Harper, Ch.
I suppose that if an administrator have in his hands the balance of an estáte, and is afterwards appointed the guardian of infants entitled to it, he will be chargeable as guardian, and the sureties to his guardianship bond will be liable, as in the case of Simkins v. Cobb, ( 2 Bailey’s Rep. 60,) referred to by the Chancellor. So, if before his appointment he has *32 received a sum of money belonging to bis wards, as in McDowall v. Caldwell, (2 M’C, Ch. Rep. 55.) Or if, in any other capacity, he be indebted to himself as guardian, being unable to sue himself, the debt shall be presumed to be paid, and he and his sureties will be liable.
There is no exception to that part of the report, or the decree, Which charges the sureties of James W. Siblywith that part of the estate of Mrs. McHardy, which was actually in his hands as administrator. It is only to so much of the report and decree as charges him with the amount received by his co-administrator Murray. It is supposed that he is liable for this on his administration bond; that this constituted a debt to himself, and that he is therefore chargeable in the character of guardian.
The general rule of this Court is, that one executor is not liable for the assets which come into the hands of his co-executor, unless under particular circumstances — such as having paid them over to him — having joined in a mis-application of them, or having joined in a receipt, by which he enabled him to receive' them. — ("Williams on Executors, 1118, et. seq.) I have not found any distinction made between an executor and an administrator, and the authors lay down the rule, treating indiscriminately of both. In Jacomb v. Harwood, (2 Ves. 267,) Sir John Strange, the Master of the Rolls, after stating that one of several executors has the entire control of the personal estate, adds, “It has been questioned in case of administrators, whether one administrator had such a power equal to that of an executor: and that the attempt has been made to distinguish that from the case of executors, who it was always agreed, might do so : and though, in Hudson v. Hudson, it was said that the Lord Chancellor had been of opinion that one administrator could not release, so as to bind the other; yet, when that case was more narrowly looked into, it appeared clearly that it was applicable to the particular circumstances of that case; and the words of the decree in that case are, that the plaintiff’s are not barred by the accounts stated or the release accepted, from demanding an account from the two sons in a Court of Equity. But after that, was Willand v. Penn, where it was held in B. R. after three arguments, that one administrator stood on the same *33 ground and foundation with one executor.” No distinction seems to be made with lespect either to their power or duties. Indeed if all administrators were required to join in any act, it would be so much more in their favour. Trustees, it is said, are not liable for each others acts, though they join in a receipt, if they join merely for conformity. Otherwise of an executor, whose single receipt is sufficient. Indeed the plainest justice requires that each should be liable for his own acts, at least in the first instance.— Lenoir v. Winn and others, 4 Eq. Rep. 65.
But, it is urged that Jas. W. Sibly was a joint obligor on the administration bond; and, by the very terms of his contract, bound for the administration of Murray, as well as for his own. This may be so, and I suppose that the personal representative of Sibly, and the sureties of himself and Murray in Florida, may be made liable at law on that bond. But this is a different thing from his general liability as a trustee, in this Court. He will be liable as administrator, not as guardian. To constitute that debt to himself, which would bring this case within the principles of the cases relied on, it is necessary that there should have been a breach of the condition of the bond; and to constitute a breach of the condition of the bond, it is necessary that Murray should' have been called to account, and a decree obtained against him. If that had been done, and on his default, a judgment had been obtained against Sibly on the administration bond, this would have constituted such a debt to himself, on his being appointed guardian, as he was bound to pay. According to the view I have taken, it must be understood that each shall, as trustee, account for and pay over, what he himself has received; and it is on the default of either to do this, that the legal liability of both attaches on the administration bond. Suppose that Murray were now alive and solvent; is it to be imagined that the Court would, in the first instance, malee Sibly liable for the whole estate, without Murray’s being even a party to the suitl It appears that he is dead, and there is a suggestion, though I believe no proof, that his estate is insolvent. But this does not dispense with the necessity of first establishing the accounts against his personal representative. He alone is competent to litigate it. He might be able to shew that *34 without any default of the administrator Murray, it was impossible to collect some of the monies now charged; or that he had paid money on acconnt of the estate, of which it would be impossible that Sibly should furnish the evidence. But the sureties of Sibly’s guardianship bond can never be made liable. Whatever Sib-ley may have done,, they certainly have never become bound for Murray’s- faithful administration.
Nor do I perceive that Sibly or his sureties can be made liable, on the ground of his laches, in failing to recover the estate from his co-administrator in Florida. He could have maintained no suit for that purpose there, in virtue of his appointment as guardian here. And I know of no principle on which he could be required, (as a matter of official duty,) to procure the appointment of guardian there, in order to enable him to bring such a suit.
The motion to reverse the Chancellor’s decree, so far as respects the exception in question, is therefore granted, and the exception sustained.